IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **LIGHTHOUSE CAPITAL FUNDING, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S LONDON and CRAWFORD & COMPANY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, **LIGHTHOUSE CAPITAL FUNDING, INC.**, for its cause of action against Defendants, **CERTAIN UNDERWRITERS AT LLOYD'S LONDON** and **CRAWFORD & COMPANY** respectfully states:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff, Lighthouse Capital Funding, Inc. (hereinafter "Lighthouse"), is a California corporation with its principal place of business located at 15332 Antioch Street, Suite 540, Pacific Palisades, California 90272.

2.  Certain Underwriters at Lloyd's London (hereinafter "Lloyd's"), is a foreign insurance company licensed to conduct business under the laws of the State of Tennessee. Service may be made upon the Tennessee Commissioner of Insurance, 500 James Robertson Parkway, Davy Crockett Tower, Nashville, Tennessee 37243.

3.  Crawford & Company ("Crawford") is a Georgia Corporation duly licensed to conduct business under the laws of the State of Tennessee, with its principal

1

place of business located at 1001 Summit Boulevard, Atlanta, Georgia 30319.  Service

may be made upon its registered agent CT Corporation System at 800 South Gay Street,

Suite 2021, Knoxville, Tennessee 37929.

     4.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

     5.    Venue is proper pursuant to 28 U.S.C. § 1391(b).

### ALLEGATIONS OF FACT

     6.    The insured property of Plaintiff Lighthouse is located at 1251 South

Willet Street, Memphis, Shelby County, Tennessee (hereinafter, the "Property"), and is a

multiple unit residential apartment building, consisting of 29 buildings on approximately

12 acres of land.

     7.    At all times material hereto, Plaintiff was insured as a named loss payee

under a valid policy of insurance provided by Defendant Lloyd's to the owner of the

Property, Oak Park Real Estate Equities, LLC (hereinafter "Oak Park"). Said policy,

which covered Plaintiff against losses resulting from theft, is identified as policy number

7LAP420080 (*Attached hereto as Exhibit "A"*).

     8.    Subsequent to Plaintiff Lighthouse taking a security interest in the

Property by Deed of Trust executed by Oak Park in August 2006, Defendant Lloyd's

provided written confirmation to Plaintiff Lighthouse showing it as a loss payee under the

policy insuring the Property. (*Attached hereto as Exhibit "B"*).

     9.    The Property was properly secured with fencing and an on-site security

officer.

     10.    In November 2007, Oak Park defaulted on its payment of insurance

premiums to Defendant Lloyd's. Plaintiff Lighthouse began to pay the monthly insurance

premiums to Defendant Lloyd's, and Defendant Lloyd's accepted said premiums thereafter.

11.    Said policy of insurance was in full force and effect in March 2008, at the time and place of the incident hereinafter described, and the duty was imposed on Defendant Lloyd's by virtue of the obligations undertaken by it under said policy of insurance to act in good faith in protecting the insured with respect to any claim arising from loss to the Property, including, as an element of its said duty, coverage against losses resulting from theft.

12.    On March 28, 2008, Plaintiff discovered that the Property had been burglarized and that many things essential to the value of the Property, including copper and brass plumbing, aluminum, and HVAC units, had been stolen.

13.    On April 1, 2008, Plaintiff filed an insurance claim, including a Proof of Loss statement pursuant to the policy, as the Owner/Mortgagee of the insured Property. (*Attached hereto as Exhibit "C"*).

14.    Directly after foreclosing on the Property on April 30, 2008, the President of Plaintiff Lighthouse, accompanied by its attorney, went to the Memphis Police Department and reported the theft. A police officer was sent to the property shortly thereafter to review the damage to the Property. The police department conducted a thorough investigation which resulted in at least three arrests and uncovered no wrongdoing on the part of Plaintiff.

15.    Defendant Lloyd's employed Defendant Crawford, a claim adjusting company for insurers to act as its agent.

16.     Plaintiff fully performed all of the terms, covenants, and conditions required by said policy to be performed on their part.

17.     On or about June 6, 2008, a field adjustor for Defendant Crawford, while acting as agent for Defendant Lloyd's, visited the Property to take photographs and further investigate the Plaintiff's claim.

18.     On or about January 5, 2009, Plaintiff received a letter from Melissa D. Hollingsworth, Claims Adjuster for Defendant Crawford, notifying Plaintiff on behalf of Lloyd's that their claim was denied because the Defendant Crawford's field adjuster was unable to obtain police reports on file from the Memphis Police Department. Defendant Crawford alleged that theft was the result of multiple occurrences. Further, Defendant Crawford stated that it was their opinion that the damages occurred prior to the policy inception and that the insured had failed to secure the property as fencing had not been repaired to deter vandals. (*Attached hereto as Exhibit "D"*).

19.     On or about February 3, 2009, Chuck Howarth of The Howarth Group, Inc. stated to Melissa D. Hollingsworth, Claims Adjuster for Defendant Crawford, on behalf of Plaintiff Lighthouse,  that their denial of Plaintiff's claim was not based on facts and was not made based upon a genuine and complete investigation of Plaintiff's loss and further addressed each of the reasons given for Defendant Crawford's denial in its January 5, 2009 letter. Additionally, the letter to Defendant Crawford requested evidence and specific facts to verify Defendant Crawford's findings and demanded that their decision to deny the claim be reconsidered and that the claim be honored. (*Attached hereto as Exhibit "E"*).

20.     On or about March 24, 2009, Melissa D. Hollingsworth, Claims Adjuster for Defendant Crawford, responded to Mr. Howarth's February 3, 2009 letter stating that Plaintiff's claim was denied because the dates on the police reports "demonstrate there were multiple occurrences of vandalism and theft". Defendant Crawford further stated that the police reports were alleged to be inapplicable as "this policy was cancelled as of May 13, 2008" and that "during the site inspection on 6/6/2008, the field adjuster's photos clearly show holes in the fencing around the railroad tracks which had not been repaired allowing unrestricted access to and from the property." (*Attached hereto as Exhibit "F"*).

## CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

21.     Defendant Lloyd's has breached the insurance policy entered into by the parties by refusing to provide coverage of losses.

22.     As a direct and proximate result of Defendant Lloyd's breach of the policy, the Plaintiff has suffered damages.

### COUNT II – TENNESSEE CONSUMER PROTECTION ACT

23.     Defendants have engaged in unfair and/or deceptive acts and practices in violation of Tennessee's Consumer Protection Act, located at T.C.A. §47-18-101 *et seq*.

24.     Plaintiff Lighthouse is a consumer within the definition of the Act.

25.     Defendants Lloyd's engaged in unfair and/or deceptive acts and practices by refusing to pay, in bad faith, the Plaintiff's claim pursuant to the terms of the policy.

26.     Defendant Crawford frivolously and/or unjustifiably refused to thoroughly investigate Plaintiff's claim for damage to the Property and based its determination that

there was no coverage on factually incorrect assertions which a reasonable investigation would have revealed.

27.     As a direct and proximate result of Defendants' unfair and deceptive acts and practices, the Plaintiff has suffered and will suffer substantial monetary damages.

### COUNT III - BAD FAITH

28.     Defendant Lloyd's has acted in bad faith by refusing to pay, pursuant to the terms of the policy, the claim filed by the Plaintiff, specifically Defendant Crawford's claim number 6706-1207749.

29.     Plaintiff Lighthouse is entitled to recover under the provisions of the policy.

30.     Defendant Lloyd's frivolously and/or unjustifiably refused to thoroughly investigate or honor Plaintiff's claim for damage to the Property and based its decision to deny the claim on factually incorrect assertions which a reasonable investigation would have revealed.

31.     As a direct and proximate result of Defendant Lloyd's bad faith, Plaintiff has suffered damages.


**WHEREFORE**, Plaintiff prays for the following relief:

1.     That Plaintiff be awarded all damages available against Defendant Lloyd's under the insurance policy;

2.     That Plaintiff be awarded compensatory damages against Defendant Lloyd's of an amount to be proven at trial;

3.     That Plaintiff be awarded treble damages against Defendants, jointly and severally, pursuant to T.C.A. §47-18-109(a)(3);

4.     That Plaintiff be awarded reasonable attorneys fees and costs against Defendants, jointly and severally, pursuant to T.C.A. §47-18-109(e)(1) and T.C.A. §56-7-105(a);

5.     That Plaintiff be awarded the twenty-five percent (25%) bad faith penalty against Defendant Lloyd's pursuant to T.C.A. §56-7-105(a);

6.     That Plaintiff be awarded pre-judgment interest;

7.     That a jury be empaneled to hear all issues so triable; and

8.     Such other, further, and different relief as this Honorable Court deems just and proper.

Respectfully Submitted,

**BLACKBURN & McCUNE, PLLC**

/s/ W. GARY BLACKBURN
W. Gary Blackburn (#3484)
101 Lea Avenue
Nashville, Tennessee 37210
Telephone: (615) 254-7770
Facsimile: (615) 251-1385
Email: gblackburn@bmclawyers.com

*Attorney for Plaintiff*

This Declaration Page is attached to and forms part of certificate provisions (Form SLC-3 USA)

| Previous No. | Authority Ref. No. | Certificate No. |
|---|---|---|
| **5LAP420080** | **BO429CUC070516** | **7LAP420080** |

Name and address
of the Assured

**OAK PARK REAL ESTATE EQUITIES LLC**
**3275 S. JONES STE 105**
**LAS VEGAS, NV 89146**

Effective from: **06/01/2007** To: **06/01/2008**
both days at 12:01 a.m. standard time

| Insurance is effective with certain | Percentage |
|---|---|
| **UNDERWRITERS AT LLOYD'S LONDON** | **100%** |

| Amount | Coverage | Rate | Premium |
|---|---|---|---|
| See Supplemental Declarations | | VRS. * | $0.00 |
| | **REPORTING FORM** | Policy Fee | $100.00 |
| | **POLICY** | | |
| | | 3.5% Surplus Lines Tax: | $3.50 |
| | | 0.4% Stamping Office: | $0.40 |
| | | TOTAL: | **$103.90** |

Forms: See Supplemental Declarations

**\*Premium adjusted per Report submitted by insured**

Special Conditions
NMA 1331; NMA 2802(EDRE); MOLDEX; LSW 1135B; NMA 1998; LSW 1001; LMA 5053

Service of Suit may be made upon:
MENDES AND MOUNT, 750 7TH Avenue, New York, N. Y. 10019-6829

**CRUMP INSURANCE SERVICES OF MEMPHIS, INC.**

**Correspondent**
**Dated: 05/30/2007**

EXHIBIT

A

Page 1 of 55

# TABLE OF CONTENTS

| | |
|---|---|
| Common Declarations Page | 1 |
| State Disclosure | 3 |
| Table of Syndicates | 4 |
| Endorsement NMA 1331 : CANCELLATION CLAUSE | 5 |
| Endorsement NMA 2802(EDRE) : ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE) | 6 |
| Endorsement MOLDEX : TOTAL MOLD EXCLUSION | 7 |
| Endorsement LSW 1135B : LLOYDS PRIVACY POLICY STATEMENT | 8 |
| Endorsement NMA 1998 : SERVICE OF SUIT CLAUSE (U.S.A.) | 9 |
| Endorsement LSW 1001 : SEVERAL LIABILITY NOTICE | 10 |
| Endorsement LMA 5053 : TRIA Terrorism Not Included | 11 |
| Property Supplemental Declarations | 12 |
| Property Coverage Form    PREO (3-1-07) | 13 |
| SECTION I - GENERAL PROPERTY PROVISIONS | 13 |
| SECTION II - ATTACHMENT OF INSURANCE AND PROPERTY COVERED | 15 |
| SECTION III  -  CAUSES  OF  LOSS | 18 |
| SECTION IV  -  POLICY  CONDITIONS | 23 |
| Endorsement PREND : PROPERTY RATE ENDORSEMENT | 28 |
| Endorsement RCPWR(6-1-06) : Res. Comm. Prop. Wind Rates | 29 |
| Endorsement MHEND : MOBILE HOME COVERAGE ENDORSEMENT | 31 |
| Endorsement DEDCL : DEDUCTIBLE ENDORSEMENT | 32 |
| Endorsement FRZEND : FREEZE ENDORSEMENT | 33 |
| Endorsement RCVALEND : RCV/VALUATION ENDORSEMENT | 34 |
| Endorsement NMA 1191 : RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE | 36 |
| Liability Supplemental Declarations | 37 |
| SECTION I - COVERAGE | 38 |
| COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY | 38 |
| COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY | 40 |
| COVERAGE C - MEDICAL PAYMENTS | 40 |
| SUPPLEMENTARY PAYMENTS - COVERAGES A AND B | 41 |
| SECTION II - WHO IS AN INSURED | 41 |
| SECTION III - LIMITS OF INSURANCE | 42 |
| SECTION IV - GENERAL LIABILITY CONDITIONS | 42 |
| SECTION V - DEFINITIONS | 44 |
| Endorsement EXCLDPS : DESIGNATED PROFESSIONAL SERVICES | 47 |
| Endorsement EXCL-FL : FINANCIAL INSTITUTIONS EXCLUSION OF FIDUCIARY LIABILITY | 48 |
| Endorsement GCE-CX : GENERAL ENDORSEMENT CANCELLATION | 49 |
| Endorsement NMA 1256 : NUCLEAR INCIDENT EXCLUSION CLAUSE – LIABILITY-DIRECT (BROAD) (USA) | 50 |
| Endorsement EPAV#194 : EXCLUSIONS / LIMITATIONS | 52 |
| Endorsement EXCL-PALC : EXCLUSIONS | 53 |
| Endorsement EXCL-PCO : PRODUCTS - COMPLETED OPERATIONS HAZARD | 55 |

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Tennessee insurance statutes.

# TABLE OF SYNDICATES

## ATTACHING TO AND FORMING PART OF AGREEMENT NUMBER
## BO429CUC070516

The Table of syndicates referred to in the Agreement is as follows:

| PROPORTION % | SYNDICATE | UNDERWRITER'S REFERENCE |
|---|---|---|
| 40.000 | 2987 | JD343507A000 |
| 40.000 | 510 | FDFA07FQUP |
| 20.000 | 807 | E4000709807A |
| TOTAL LINE | No. OF SYNDICATES | |
| 100.000 | 3 | |

The list of Underwriting Members of Lloyd's is in respect of the 2007 year of account.

**U.S.A. AND CANADA**

## CANCELLATION CLAUSE

(Approved by Lloyd's Underwriters' Non-Marine Association)

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this contract of insurance. This insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**20/4/61**
**N.M.A. 1331**

## ELECTRONIC DATE RECOGNITION EXCLUSION (EDRE)

This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

   a.  the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

   b.  any change, alteration, or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, programme or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

**EDRE**
**NMA 2802 (17/12/1997)**
 Form approved by Lloyd's Underwriters' Non-Marine Association Limited

## TOTAL "MOLD" EXCLUSION

Notwithstanding anything to the contrary contained in the Policy:

1. We will not pay for loss, damage, cost, or expense caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to "mold". Loss, damage, cost or expense caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to "mold" is excluded regardless of any other cause or event that contributes concurrently, or in any sequence with, the loss, damage, cost or expense; and

2. We will not defend any claim or suit, or pay any damages, loss, expense, cost or obligation caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to "mold".

This exclusion also applies to any damage, loss, cost, or expense arising out or associated in any way, with any:

a. request, demand, or order that any insured or others abate, mitigate, test for, monitor, remediate, clean up, remove, contain, treat, detoxify, kill, destroy, dispose of, investigate or neutralize, or in any way respond to or assess the presence or effects of "mold"; or

b. claim or suit on behalf of any person, entity, or organization, including any governmental authority, for damages because of abating, mitigating, testing for, monitoring, remediating, cleaning up, removing, containing, treating, detoxifying, killing, destroying, disposing of, investigating, or neutralizing, or in any way responding to, or assessing, the effects of "mold"; or

c. any obligation to share with, repay, or indemnify any person, organization or entity, related in any way to items a) and b) above.

The following definition is added to the Policy;

"Mold" means any species of fungi, including but not limited to, mold, yeast, mildew, spores, mold, toxins, mycotoxins, mold metabolities, mold antigens, mold allergens, mold produced antibiotics, or dust or fumes containing any of the foregoing, individually, or in any combination therewith or with another substance.

**MOLDEX(9 01)**

# LLOYD'S PRIVACY POLICY STATEMENT

## UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

## INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

- Information contained in applications or other forms that you submit to us, such as name, address, and social security number

- Information about your transactions with our affiliates or other third-parties, such as balances and payment history

- Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

## INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

## RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

**You have a right to request access to or correction of your personal information that is in our possession.**

## CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.

**06/03**
**LSW1135B**

# SERVICE OF SUIT CLAUSE (U.S.A.)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon

> Mendes & Mount,
> 750 7th Avenue,
> New York 10019 6829
> U.S.A.

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**N.M.A. 1998 (24/4/86)**
 Form approved by Lloyd's Underwriters Non-Marine Association

## SEVERAL LIABILITY NOTICE

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

**LSW 1001 (Insurance) 08/94**

## U.S. Terrorism Risk Insurance Act of 2002
## Not Purchased Clause

*This Endorsement is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Insurance Act of 2002" as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

**LMA5053**
**22/12/05**
Form approved by Lloyd's Market Association

## PROPERTY SUPPLEMENTAL DECLARATIONS

**Certificate Number: 7LAP420080**

Name and address of the Insured:

**OAK PARK REAL ESTATE EQUITIES LLC**
**3275 S. JONES STE 105**
**LAS VEGAS, NV 89146**

I.     **Interest:** All Real Property, subject to policy limitations, in which the Insured has an insurable interest as Owner, Mortgagee, or as the Servicing Agent by written agreement.

II.    **Amount of Coverage:** As per values filed by the Insured, but in no event for more than $5,000,000.00 for any specifically reported and scheduled location.

III.   **Rates:** Rates are to be applied separately for all property values specifically reported and scheduled for each location or for any other coverages added to this policy by endorsement.

### SEE RATE ENDORSEMENT(S)

IV.    **Deductibles:** See endorsement DEDCL(10-1-05)

V.     **Schedule of Properties:** As per reports filed by Insured.

VI.    **Forms and Endorsements applying to Property Coverage Form:** PREO; PREND; RCPWR(6-1-06); MHEND; DEDCL; FRZEND; RCVALEND; NMA 1191

## Property Coverage Form    PREO (3-1-07)

**Insurance is issued by Certain Underwriters at Lloyd's, London (Underwriters) in consideration of the required report of values and premium payment for the property insurances attached and for which a limit of insurance is shown on the Declarations Page. This policy contains all the agreements between the Insured and the Underwriters concerning the insurance afforded. All terms and conditions apply to all sections of this policy, unless specifically superseded by the provisions of each section. All coverages are subject to the following:**

## SECTION I - GENERAL PROPERTY PROVISIONS

**(1)    INSURED**

                                 **OAK PARK REAL ESTATE EQUITIES LLC**
                                 **3275 S. JONES STE 105**
                                 **LAS VEGAS, NV  89146**

**(2)    POLICY TERM**

This policy covers all property and/or interest at risk as of 12:01 AM (Standard Time at place of issuance) on **06/01/2007** and continues in force until 12:01 AM (Standard Time at place of issuance) on **06/01/2008**.

**(3)    PREMIUM AND REPORTS**

This policy is issued in consideration of payment of the premiums charged, subject to the maximum amount of insurance set forth in Item II of Section 1- Property Coverage Form Declarations Page, and subject to the Insured's required monthly report of values with respect to any covered loss sustained by the Insured after 12:01 a.m. Standard time of the date set forth in Item III of the Common Policy Declarations.

Unless otherwise stated, premiums are **fully earned** each month based on the Insured's report of values with respect to all covered Real Property of the Insured for which the Insured acquires, secures and maintains an insurable interest as of the last day of each month for which coverage is afforded. Premium shall be charged by the Underwriters and applied against the Deposit Premium, if any, until the same is exhausted, following which all further earned premium shall be due and payable to the Underwriters at the time of filing the required monthly report. When filing the required monthly report, the maximum cancellation of a specific property location can not exceed 60 days prior to the required monthly report in which the cancellation occurs.

The Insured, or its designated representative, is authorized to request the Underwriters to bind, change, or cancel coverage hereunder subject to all terms, limits, conditions, provisions, and stipulations in this policy, to be effective at 12:01 a.m. Standard time on the date as Reported to Underwriters by the Insured at the location of the property. **As to the property covered under this policy, it is a condition of this insurance that the Insured, or their authorized representative, must report to the Underwriters, on or before the tenth (10th) day of each month; (i) a complete listing of the full insurable value of all property at each location to be insured for the preceding month, (ii) a calculation of the required premium, and (iii) payment of premium due with the report.** *Foreclosed properties must be reported within 60 days of foreclosure date to prevent Clause (10), ERRORS AND OMISSIONS-AUTOMATIC COVERAGE AND ERRORS AND OMISSIONS DEDUCTIBLE to be applicable.*

It is agreed that the report shall, at a minimum, include the following information for all property at each location to be insured under this policy: **(1)** each exact physical property address, location, or legal description, **(2)** each property or loan number, **(3)** occupancy, **(4)** interest of Insured or Mortgagor, **(5)** addition/effective, change/amend, or cancellation/deletion date (if applicable) of all property at each location, **(6)** full insurable value of all covered property at each location, and **(7)** name and address of each Mortgagor, if any, and **(8)** foreclosure date; or, **(9)** eviction date for foreclosed properties. Underwriters may require additional information on certain properties at each location to be insured, including, but not limited to, construction type, roof type, year built, and square footage.

During any month, if the Insured has failed to file with the Underwriters a report of values as required above, this policy shall only cover all property at each location **for not more** than the amounts included in the last filed report of values, any premiums

accordingly being fully earned, subject otherwise to all terms, conditions, and provisions of this policy. Additionally, **any failure by the Insured to provide each required monthly report and premium remittance will suspend and void any coverage under Clause (10) ERRORS AND OMISSIONS - AUTOMATIC COVERAGE.**

**(4)     LIMIT OF LIABILITY**

**This policy will insure against loss only for the values of each location properly reported to us monthly. But in no event for more than a maximum of $5,000,000.00 for all property at each specifically reported and scheduled location by the Insured, as further shown in Item 4 of the Declaration Page, and subject to all terms, conditions, and provisions of this policy.** Coverage for any Appurtenant Structures is further limited to ten percent (10%) of the building or dwelling value, but does not increase the limit of coverage at any specifically reported and scheduled location.

**The annual aggregate for all properties at all locations as respects the peril of flood is $5,000,000.00. The annual aggregate for all properties at all locations as respects the peril of earth movement is $5,000,000.00, however, it is furthermore agreed that the peril of earth movement is not provided on any properties located within the State of California or Alaska.**

**(5)     DEDUCTIBLES**

All claims for loss, damage, or expense arising out of any occurrence shall be adjusted separately for each specifically reported and scheduled location, and from the amount of such **adjusted claim** the following shall be deducted **[SEE ENDORSEMENT DEDCL(10-1-05)]**. If any underlying insurance is in force, the Underwriter's liability shall be the sum in excess of the underlying insurance and/or the deductible amount, whichever is greater.

**(6)     VALUATION**

**Valuation provided** under this policy as per the item checked below:

> **(a)        [ X ] "Replacement Cost Value"** (see attached endorsement #RCVALEND(2/1/97)for further definition)
>
> **"Replacement Cost Value"** means there **will not be** a deduction for depreciation.
>
> **(b)        [ ] "Actual Cash Value"** (see attached endorsement #ACVALEND(2/1/97)for further definition)
>
> **"Actual Cash Value"** means there **will be** deduction for depreciation.

**(7)     VACANCY, ALTERATIONS AND USE**

Except as otherwise provided, permission is hereby granted for any property to be and remain vacant and unoccupied without limit of time, and permission is hereby granted to repair any property. The Insured must specify with each monthly report of values each vacant location and furthermore, **must properly secure the location, and thereafter make a monthly inspections to verify the security.**

**Unoccupied** means habitual use of less than fifty percent (50%) of the area available for a purpose for which the property was designated.

Alterations, renovations, repairs and remodeling are permitted under this policy.

New construction (new "start from ground-up" construction on vacant land) requires a separate Builders Risk Policy or Builders Risk Endorsement.

## SECTION II  -  ATTACHMENT OF INSURANCE AND PROPERTY COVERED

**(8)   ATTACHMENT OF INSURANCE**

This policy applies only to those properties specifically reported and scheduled in the required monthly report. Coverage shall attach on the effective date indicated on the required monthly report subject to all terms, conditions, and provisions of this policy.

It is agreed and understood by the Insured that at the time of attachment, the Insured or anyone acting on behalf of the Insured through a written agreement, has no knowledge of any loss which would fall within the coverage provided by this Policy.

Notwithstanding the foregoing, coverage under this policy shall attach in respect to the items checked below:

**(a)   [ X ] "FORCED PLACE PROPERTY"**

**"Forced Place Property"** means that the mortgagor has failed to procure required physical damage insurance as required by the mortgagee.

The mortgagor of **"Forced Place Property"** shall be considered an additional insured as respects to any residual amounts of insurance over and above the insurable interest of the Insured in said property.

**(a)   [ X ] "FORECLOSED/REPOSSESSED PROPERTY"**

**"Foreclosed/Repossessed Property"** means that the mortgagee has taken title to or physical possession of the property.

**(9)   PROPERTY COVERED**

This policy insures all Real Property at specifically reported and scheduled locations against risks of direct physical damage or loss, which is not otherwise excluded, subject to any terms, conditions, and provisions of this policy.

**"Real Property"** means a building or structure including additions, permanently installed fixtures, machinery or equipment.

**"Real Property"** insured under this policy includes the items checked below:

**(a)   [ X ] "COMMERCIAL REAL PROPERTY"**

**"Commercial Real Property"** is defined as being Real Property designed principally for business use and occupancy and does not meet the definition of **"Residential Real Property"**.

**(b)   [ X ] "RESIDENTIAL REAL PROPERTY"**

**"Residential Real Property"** is defined as being Real Property designed principally as a dwelling for occupation by not more than four (4) families which may include, detached single family dwelling, duplex, triplex, fourplex, condominium and co-op, townhouse, rowhouse, and any appurtenant structures

Other property insured under this clause shall include:

**(c)**      *Real Property of the Insured for which the Insured may be liable as property asset manager acting on behalf of the named investors through a written agreement, or for which the Insured may have an insurable interest as mortgagee and which the Insured has requested that Underwriters provide coverage in the monthly report furnished by the Insured.*

(d)   Mortgaged Real Property in which the Insured's named investors or mortgagees acquire an insurable ownership interest or controlling interest through repossession, filing of repossession, foreclosure, receipt of deed in lieu of foreclosure or on property in which the Insured becomes "mortgagor in possession" on which the Insured has requested coverage by providing Underwriters required monthly reports of values **assuring the property has been properly secured**.

(e)   Furthermore, coverage is provided for property in which the Insured retains an interest when sold under a conditional sales agreement, a deed of trust, or any other instrument whereby title remains in the name of the Insured.

(f)   No coverage is provided under this policy for second mortgage loans or home equity loans.

**(10)   ERRORS AND OMISSIONS - AUTOMATIC COVERAGE**

(a)   It is understood and agreed that, **with the exception of loss caused by flood (Clause 14) or earth movement (Clause 13),** this policy is automatically extended to cover an unintentional error or omission in reporting a location, but not to exceed the Insured's or Mortgagor's interest in that location. Coverage is provided subject to all policy terms, conditions, exclusions, limitations, and endorsements attached hereto for any property which the Insured may acquire or otherwise become at the risk during the term of this policy. The Insured shall give immediate notice to Underwriters of any location that involves an unintentional error or omission in reporting. **Foreclosed properties reported 60 days after foreclosure date will be subject to the Errors and Omissions Clause.**

(b)   If the total property value for the unreported and unscheduled location exceed the maximum limit per location in this policy, then the property value for the unreported and unscheduled location in excess of the maximum limit per location shall become the risk of the Insured and Mortgagor.

(c)   If the Insured should fail to provide Underwriters with the required monthly reports of values and premiums, along with payment of any earned premiums, for each location to be insured, as required in accordance with the provisions of Premium and Reporting Clause 3, then there shall be no coverage provided under this Clause. In the event any coverage is required under this clause, all premium shall be earned and due Underwriters for such locations based on the actual date coverage began, further, the Insured must report the unreported and unscheduled location and value information immediately and remit all past or unreported premiums due.

(d)   **Errors and Omissions Deductible**

It is hereby understood and agreed that a **$10,000.00 deductible shall apply** when coverage has been afforded under the Errors and Omissions Clause to the following:

(i)   any one location, for each occurrence;
(ii)   for all covered perils, to all losses arising out of direct physical damage to any scheduled property.

**(11)   PROPERTY EXCLUDED**

**This policy does not cover property not owned or property loaned or leased to others, nor the Insured's or Mortgagor's interest in:**

(a)   any personal property or contents;

(b)   temporary structures; buildings or dwellings, or any property condemned or demolished by any governmental authority;

(c)   land; water; growing crops; trees; shrubs; lawns; plants; grain; hay, straw or other crops or animals; liquids or bulk liquids whether stored in tanks or not;

(d)    property in transit; motor truck cargo; property or shipments which have been laden on board export conveyance or have come under the protection of ocean marine insurance, whichever first occurs; or shipments until fully discharged from import conveyance or until ocean marine insurance has ceased to cover, whichever last occurs; or any property in transit; or registered mail, parcel post or shipments by mail;

(e)    currency, money, bullion, jewelry, silverware, patterns, dies, stamps, coins, watches, garments, furs, evidence of debt, deeds, notes and securities, blueprints, designs or specifications, musical instruments, cameras, film;

(f)    outdoor signs, gutters, downspouts or awnings whether or not attached to a building or structure; scaffolding and forms; outdoor swimming pools, fences, piers, wharves, docks, beach or diving platforms or appurtenances; machinery or equipment; mobile, rolling or contractor's equipment; windmills, wind pumps or towers; crop silos or their contents; radio or television antennas or satellite dishes; towers or masts including their lead wiring; pipelines; transmission lines; telephone and telegraph lines; yard fixtures, light or flag poles; booms or cranes; bridges and tunnels; property while underground, airborne or waterborne; retaining wall(s) not constituting a part of buildings; foundations, walks, roadways and other paved surfaces, **unless** such property is specifically reported and scheduled for each location and added by Underwriter's addition for loss due to fire, smoke, lightning, windstorm or hail, explosion, vehicles or aircraft, flood, earth movement or volcanic action by endorsement wording to this policy;

(g)    all Real Property held by the Insured as mortgagee under mortgages, lease agreements, loan agreements, conditional sales contracts for loss arising from total or partial destruction of such property of the Insured used or held as operational facilities of the Insured, investors or mortgagees;

(h)    unrepaired damage to Real Property occurring prior to coverage under this policy;

(i)    property while in the course of new construction (new "start from ground-up" construction on vacant land). A separate Builders Risk Policy or Builders Risk endorsement is required for new construction.

(j)    property while being tested, nor property being installed or worked on if the loss results directly or indirectly from the work or installation;

(k)    steam boilers, air compressors and miscellaneous electrical apparatus, all whether permanently attached to the building or dwelling structure or not **unless** such property is specifically reported and added by Underwriter's addition for loss due to fire, smoke, lightning, windstorm or hail, explosion, vehicles or aircraft, flood, earth movement or volcanic action by endorsement wording to this policy;

(l)    tools; salesman's samples; physicians and surgeons equipment; travel baggage or exhibition property;

(m)    weapons; contraband or any property involved in illegal trade;

(n)    watercraft, aircraft, including engines, motors, equipment and accessories; automobiles, motor trucks, trailers, semi-trailers, tractors, motorcycles, snowmobiles, nor other vehicles whether motorized or not, **except for** such property which must be specifically reported and added only by Underwriter's addition by endorsement for loss due to fire, smoke, lightning, windstorm or hail, explosion, vehicles or aircraft, flood, earth movement or volcanic action by endorsement wording to this policy;

(o)    mobile homes; trailer houses; manufactured homes; any structure built on a permanent chassis with the capability to move the structure to different locations, designed to be used as a residence or commercial building, with or without a permanent foundation, **unless** such property is specifically reported and scheduled for each location and added by Underwriter's addition by endorsement.

## SECTION III - CAUSES OF LOSS

**(12)   PERILS INSURED**

This policy covers against all risks of loss arising out of direct physical loss or damage to property or to interest hereunder, except as herein amended or excluded.

**(13)   EARTH MOVEMENT**

This policy provides coverage for earth movement. The term "earth movement" shall mean loss or damage resulting or caused directly or indirectly by earth movement (other than sinkhole collapse) including any earthquake, volcanic action (including eruption, explosion or effusion of volcano) land slide, mud flow, mine subsidence, earth sinking, earth rising or shifting. Each loss by earth movement or volcanic action shall constitute a single claim hereunder; provided, if more than one earthquake shock or volcanic action shall occur within any period of seventy-two (72) hours during the terms of this policy, such earthquake or volcanic action shall be deemed to be a single earthquake or volcanic action within the meaning hereof.

The Underwriters **shall not be liable** for any loss caused by any earthquake or volcanic action occurring before the effective date and time of this policy nor any loss occurring after the expiration date and time of this policy, nor for any loss to property at a location not specifically reported and scheduled by the Insured as stated in Clause 10, Errors and Omissions - Automatic Coverage. Earth movement coverage **does not apply** to any properties or locations in the states of California and Alaska. Furthermore, within the states of California and Alaska, such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. However, if ensuing loss or damage by fire or explosion results after an earth movement, Underwriters will pay only for that ensuing loss or damage by fire or explosion within the states of California and Alaska.

The total annual aggregate limit under this policy for any loss to all properties or locations caused by earth movement is **$5,000,000.00**.

**(14)   FLOOD**

This policy provides coverage for flood. The term "flood" shall mean waves, tide or tidal water, inundation rainfall and/or resultant runoff, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, or similar bodies of water whether wind driven or not. With respect to the peril of flood: any and all losses from this cause within a seventy-two (72) hour period, or within a period of the continued rising overflow of any river(s) or stream(s), or resulting from any tidal wave or series of tidal waves caused by any one disturbance shall be deemed to be one loss insofar as the limit of liability and deductible provisions of this contract are concerned.

**The Underwriters shall not be liable for damage caused by flood to any property located in areas designated Zone A or Zone V by the National Flood Insurance Program. Neither shall the Underwriters be liable for** any loss caused by flood occurring before the effective date and time of this policy, nor for any loss occurring after the expiration date and time of this policy, nor for any loss to property at a location not specifically reported and scheduled by the Insured, as stated in Clause 10, Errors and Omissions - Automatic Coverage.

The total annual aggregate limit under this policy for any loss to all properties or locations caused by flood is **$5,000,000.00**.

**(15)   PERILS EXCLUDED**

Not withstanding anything to the contrary contained herein, this policy does not cover loss resulting in damage to or destruction of the insured property directly or indirectly caused by or resulting from:

(a)    wear and tear, marring, scratching, deterioration, rust or corrosion, fungus, decay, mold, wet or dry rot; inherent vice, hidden or latent defect; obsolescence, neglect; animals, birds, rodents, vermin, termites or other insects; smog, rust or corrosion; smoke, vapor or gas from agricultural or industrial operations; consequential loss; discharge, dispersal, seepage, migration, release or escape of pollutants; settling, shrinkage, cracking, shifting, bulging or expansion including resultant cracking of pavements, foundations, patios, walls, floors, roofs or ceilings; unless such cracking, shrinkage bulging or expansion is directly caused by fire, lightning, smoke, windstorm, hurricane, hail, explosion, aircraft, vehicles, vandalism, malicious mischief, riot, civil commotion and falling objects;

(b)    any happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether to be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority;

(c)    from nuclear reaction, nuclear radiation or radioactive contamination however such nuclear reaction, nuclear radiation or radioactive contamination may have been caused, NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction, nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction, nuclear radiation or radioactive contamination arising directly or indirectly from that Fire;

(d)    intentional acts, infidelity, criminal, malicious acts, voluntary parting or dishonesty by the Insured or Mortgagor or any of the Insured's partners, officers, directors, trustee, agent or employee; nor anyone contracted with the Insured, nor any party with any interest in said property, nor any unexplained loss, mysterious disappearance, or loss, or shortage disclosed; nor any loss if the Insured or Mortgagor has intentionally concealed or misrepresented any material fact or circumstance or made any false statement or engaged in fraudulent conduct relating to this insurance before or after a loss;

(e)    errors in design, errors on processing, faulty or inadequate workmanship, methods of construction or faulty materials; nor delay, loss of market, loss of use, faulty, inadequate or defective planning, zoning, development, surveying, siting, grading, planing, design, specifications, workmanship, repair construction, renovation, remodeling, compaction, materials or maintenance; and/or interruption of business, extra expense or increased cost;

(f)    utility failure or power interruption; electrical or magnetic injury or disturbance including arcing to electrical appliances, devices, or wiring from artificial causes; nor mechanical or machinery breakdown; dampness of atmosphere; extremes or changes of temperature or humidity or dryness unless a loss by fire or explosion not otherwise excluded ensues, and then the Underwriters shall be liable for only such ensuing loss;

(g)    freezing or thawing of plumbing, appliances, air conditioning, heating or fire protection systems in buildings, nor loss or damage to pavements, foundations, swimming pools, retaining walls, piers, wharves or docks that have been vacant beyond a period of thirty (30) consecutive days immediately preceding the loss regardless of the cause;

(h)    mechanical breakdown including rupture or bursting caused by centrifugal force; explosion or rupture or bursting of steam boilers, steam pipes, steam turbines, gas turbines or steam engines owned or operated by the Insured or Mortgagor, but not excluding resulting loss or damage from a peril not otherwise excluded hereunder. Liability is specifically assumed by the Insured for loss resulting from explosion or accumulated gases or unconsumed fuel within the firebox (or the combustion chamber) of any fired vessel, or within the flues and passages which conduct the gases of combustion there from;

(i)    water which backs up through sewers or drains, or loss by continued or repeated seepage or leakage of water or steam from within a plumbing, heating or air conditioning system or from an appliance which occurs over a period of time beyond a period of ten (10) consecutive days immediately preceding the loss;

(j)   i) vandalism and malicious mischief; theft ; and mysterious disappearance to repossessed property **if the Insured has failed to <u>properly secure and conduct monthly inspections of the interior and exterior of the property;</u>** or ii) vandalism and malicious mischief; theft, and mysterious disappearance on properties prior to the foreclosure proceedings and after foreclosure if caused by any party occupying the premises with or without the knowledge of the Insured; or **iii)** vandalism and malicious mischief; theft; and mysterious disappearance on property covered by another insurer that has denied coverage because of vacancy. Furthermore, any loss to the interior of the insured property must first have visible signs of forced entry to be covered under this policy

(k)   any loss occurring while the hazard is increased by any means within the Insured's or Mortgagor's knowledge or control; nor any loss by neglect, meaning neglect of the Insured or Mortgagor to use all reasonable means to save and preserve property at and after the time of loss, or when property is endangered by a Peril insured against, nor any loss after the property is sold or given to someone unless the loss was first reported prior to the release of the property;

(l)   any loss due to concealment or fraud of the Insured or Mortgagor. This entire policy is void if the Insured or Mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted fraudulently or made false statements relating to any aspect of this insurance, whether before or after a loss, nor any loss due to trick, false pretense or other fraudulent scheme. Such acts or act by the Mortgagor, without the Insured's knowledge, shall bar recovery by the Insured as their interest may appear;

(m)   any loss due to the suspension, lapse or cancellation of any lease, lien, contract or order;

(n)   any loss caused directly or indirectly by illegal or illicit trade regardless of any other cause or event that contributes concurrently or in any sequence to the loss;

(o)   any loss caused by the mysterious disappearance or breakage of personal property or contents;

## (16)   ASBESTOS

A.   This policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils: Fire; Smoke; Explosion; Lightning; Windstorm; Hail; Direct Impact of Vehicle, Aircraft or Vessel; Riot or Civil Commotion; Vandalism or Malicious Mischief; or Leakage or Accidental Discharge of Fire Protective Equipment.

This coverage is subject to all previously noted limitations in the policy and, in addition, to each of the following specific limitations:

1.   The said building or structure must be insured and scheduled under this policy for damage by that Listed Peril.

2.   The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

3.   The Insured must inspect the building or structure and report to the Underwriters the existence and cost of the damage within 180 days after the Listed Peril first damaged the asbestos. Any later-reported damage is not insured.

4.   Insurance under this policy in respect to asbestos shall not include any sum relating to:
  (i)   faults in the asbestos or its design or workmanship;
  (ii)   asbestos not physically damaged by the Listed Peril;
  (iii)   actions taken to protect human health or property; or
  (iv)   standards or requirements set by any government or regulatory authority.

## (17)   SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION (COMBINED CLAUSE)

SEEPAGE AND/OR POLLUTION AND OR CONTAMINATION EXCLUSION
Notwithstanding any provision to the contrary within the Policy to which this exclusion is attached, this Policy does not insure

a)   any loss, damage, cost or expense, or

b)   any increase in insured loss, damage, cost or expense, or

c)   any loss, damage, cost expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation), which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from stops or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

The term "any kind of seepage or any kind of pollution and/or contamination" as used in this exclusion includes (but is not limited to):

a)   seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b)   the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

**(18)   LAND, WATER AND AIR**

Notwithstanding any provision to the contrary within the Policy, this policy does not insure land (including but not limited to land on which the insured property is located), water or air, however and wherever occurring, or any interest or right therein.

**(19)   DEBRIS REMOVAL**

THIS CLAUSE CONTAINS PROVISIONS WHICH MAY LIMIT OR PREVENT RECOVERY UNDER THIS POLICY FOR LOSS WHERE COSTS OR EXPENSES FOR DEBRIS REMOVAL ARE INCURRED.

Nothing contained herein shall override any Seepage and/or Pollution and/or Contamination Exclusion or any Radioactive contamination Exclusion or any other Exclusion applicable to this Policy.

Any provision within this Policy (or within any other Endorsement which forms part of this Policy) which insures debris removal is cancelled and replaced by the following:

1)   In the event of direct physical damage to or destruction of property, for which Underwriters hereon agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay (hereinafter referred to as "Damage or Destruction"), this Policy also insures, within the sum insured, subject to the limitations and method of calculation below, and to all the other terms and conditions of the Policy, cost or expenses;

a)   which are reasonably and necessarily incurred by the Insured in the removal, from the premises of the Insured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and

b)   of which the Insured becomes aware and advised the amount thereof to Underwriters hereon within one year of the commencement of such Damage or Destruction.

2)   In calculating the amount, if any, payable under this Policy for loss where costs or expenses for removal of debris are incurred by the Insured (subject to the limitation in paragraph 1 above):

a)   the maximum amount of such costs or expenses that can be included in the method of calculation set out in (b) below shall be the greater of U.S. $25,000 (twenty-five thousand dollars) or 10% (ten percent) of the amount of the Damage or Destruction from which such costs or expenses result; and

b)   the amount of such costs or expenses as limited in (a) above shall be added to:

**i)**     the amount of the Damage or Destruction; and

**ii)**    all other amounts of loss, which arise as a results of the same occurrence, and for which Underwriters hereon also agree to pay, or which but for the application of a deductible or underlying amount they would agree to pay; and the resulting sum shall be the amount to which and deductible or underlying amount to which this Policy is subject and the limit (or applicable sub-limit) of this Policy, shall be applied.

## SECTION IV  -  POLICY  CONDITIONS

**(20)    DISCOVERY**

It is understood and agreed by the Insured or Mortgagor that, in the event of any occurrence which may result in loss, damage, injury expense or claim for which the Underwriters may become liable under this policy, notice shall be immediately given to said Underwriters. Furthermore, Underwriters **are not liable**, under any circumstances, for any loss, damage, injury, expense or claim of whatever nature, which is insured under the Insuring Agreements appearing in this policy; unless any and every notice of claim, pleading and paper of any kind relating to such occurrence shall be given to Underwriters ***within sixty days of date of loss or when the condition becomes known to the Insured or Mortgagor.***

Unless otherwise stated elsewhere in this policy, it is understood and agreed by the Insured and Mortgagor that the Underwriters **are not liable,** under any circumstances, for any loss, damage, injury, expense or claim of whatever nature, which is insured under the Insuring Agreements appearing in this policy, <u>unless notice of such loss, damage, injury, expense or claim is asserted against the Insured or Mortgagor in writing, or suit thereon is brought against the Insured or Mortgagor,</u> **no later than 60 days after (i)** *date of loss, or* **(ii)** *the condition becomes known to the Insured or Mortgagor, or* **(iii)** *the expiration of the policy period, or* **(iv)** *if this policy is canceled during the policy period, the effective date of such cancellation.*

Provided however, that if any such notice is asserted, or any such suit is brought within the said period of time, then for the purpose of this clause and this insurance, any subsequent notice asserted against the Insured or Mortgagor in writing, or any subsequent suit brought against the Insured or Mortgagor, of or for loss, damage, injury, expense or claim arising out of or resulting from that same occurrence, shall be deemed to have been asserted against or brought against the Insured or Mortgagor during said period of time. If the aforesaid period of limitation relating to the giving of notice or to commencement of suit against the Insured or Mortgagor is prohibited or made void by any law controlling the construction thereof, such period of time shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**(21)    SUE AND LABOR**

In case of actual or imminent loss or damage, it shall be lawful and necessary for the Insured, their factors, servants or assigns, to sue, labor or travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice of this insurance; nor shall the acts of the Insured or the Underwriters in recovering, saving and preserving the property insured in case of loss or damage, be considered a waiver or acceptance of an abandonment; to the charges whereof, the Underwriters will contribute according to their proportion of the sum hereby insured.

**(22)    SERVICE OF SUIT**

See Endorsement NMA1998

**(23)    CONTRIBUTING INSURANCE**

Permission is granted for other policies written upon the same plan, terms, conditions, and provisions as those contained in this policy. This policy shall contribute to the total of each loss otherwise payable herein to the extent of the participation of this policy to the total limit of liability of all policies.

**(24)    EXCESS PERMISSION**

Permission is granted for the Insured or Mortgagor to have excess insurance over the limit of liability in this policy without prejudice to this policy and the existence of such insurance, if any, shall not reduce any liability under this policy.

**(25)    OTHER INSURANCE**

Except as referred to in Clause (23), CONTRIBUTING INSURANCE, and Clause (24), EXCESS PERMISSION above, if any property included in the terms of this policy shall at the time of any loss be more specifically insured, this policy shall only extend to cover such property only so far as related to any excess of insured property only for such loss as shall be in excess of the amount payable and recoverable from such more specific insurance.

**(26)    BREACH OF WARRANTY**

If a breach of any warranty, duty, application, representation, responsibility, report or condition in any form or endorsement attached to or made a part of this insurance shall occur, such breach, by the term of such warranty, duty or condition, shall operate to suspend or void this insurance. It is agreed that such suspension or voidance due to such breach shall be effective only during the continuance of such breach, and then only as to the property or other separate locations to which such warranty or condition has reference and as respects to which such breach occurs.

**(27)    REQUIRED BY LAW**

Any provisions, required by law to be stated in policies issued by a subscriber hereto, shall be deemed to have been stated herein.

**(28)    TITLES OF PARAGRAPHS**

The several titles of the various paragraphs of this policy form (and of endorsements and supplemental contracts, if any, are hereafter attached to this policy) are inserted solely for convenience or reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

**(29)    CONFLICT OF WORDING - CHANGES**

Changes in this policy may be made only by attaching a written endorsement properly executed by Underwriters' authorized representative. No provision of the policy may be waived unless the terms of this policy allow the provision to be waived. Underwriters' request for an appraisal or examination will not waive any of Underwriters' rights.

**(30)    INSPECTION, SURVEYS AND AUDIT**

The Underwriters shall be permitted, but not obligated, to inspect any insured property at any time; give the Insured or Mortgagor reports on the conditions Underwriters find; and recommend changes relating to insurability and make changes to rates being charged. Neither the Underwriters' right to make inspection, nor the making thereof, nor any reports therein shall constitute an undertaking, on behalf of, or to the benefit of the Insured or Mortgagor or others, to determine or warrant that such property or operations are safe or healthful, or in compliance with any law, rule or regulation. Underwriters waive no rights and undertake no responsibility by reason of such inspection or examination or the omission thereof.

The Insured must keep accurate records of the information Underwriters need to compute the Insured's premium. The Insured agrees to send to the Underwriters reports or copies of any and all records which are used at any time Underwriters request them. The Underwriters may examine and audit the Insured's books and records at any reasonable time during the policy period and extensions thereof, and within three (3) years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**(31)    TRANSFER OF RIGHTS**

The rights and duties of the named Insured under this policy may not be transferred without the express written consent of Underwriters by endorsement of this policy.

**(32)    NOTICE OF LOSS, DUTIES AND RESPONSIBILITIES**

The Insured or Mortgagor **shall immediately report in writing**, to the Underwriters, a description of every claimed loss or damage which occurs and may become a claim under this insurance immediately after it becomes known to the Insured or Mortgagor.

**The Insured or Mortgagor must immediately:**

    **(1)**    notify the police in case of loss by theft or vandalism,

    **(2)**    protect the property from further damage or loss,

    **(3)**    make reasonable and necessary repairs to protect the property from further damage or loss,

    **(4)**    keep an accurate record of repair expenses necessary to protect the property from further damage or loss,

    **(5)**    make a list of all damaged or destroyed property showing in detail cost quantities, costs, actual cash value, amount of loss claimed and any other information Underwriters may require,

    **(6)**    attach all bills, receipts and related documents that substantiate the figures in the list, Underwriters will not reimburse for the costs of repairs unless records and receipts are provided.

    **(7)**    exhibit the damaged property as often as Underwriters may require,

    **(8)**    submit to an examination under oath and

    **(9)**    do everything possible to preserve any rights to recover loss from others. If the Insured should do anything to impair the rights of recovery by Underwriters, the loss will not be covered.

**(33)    PROOF AND PAYMENT OF LOSS**

A detailed sworn proof of loss including the date and time of loss; the interest of the Insured or Mortgagor and all others in the property; all encumbrances on the property; other insurance which may cover the loss; changes in title, use occupancy or possession of the property and if required, any plans and specifications of the damaged property shall be filed by the Insured or Mortgagor with the Underwriters, in writing, within sixty (60) days of Underwriters' request. Loss shall be adjusted with the Insured or Mortgagor and all adjusted claims shall be paid to the Insured or Mortgagor or to its order after presentation and acceptance of sworn proof of loss by the Underwriters or its appointed representatives. No loss payment shall be made until Underwriters have received the required Proof of Loss. Underwriters will make payments for covered losses to the Insured, Mortgagor or any mortgage holder based on the financial interest each has in the covered property at the time of loss.

If Underwriters give the Insured or Mortgagor written notice within thirty (30) days after receipt of the signed sworn statement of loss from the Insured or Mortgagor, Underwriters may repair or replace any part of the property damaged with equivalent property. For loss adjustment purposes on repossessed property, the Insured as their interests appear shall be considered as sole unconditional owners of the insured property, any contract or lease to the contrary Notwithstanding.

If a covered location is damaged by a covered loss and the property is sold or given to a third party before the claim is settled, Underwriters will continue to adjust the loss with the Insured and make payments due to the Insured. There can be no abandonment of property to Underwriters. **No rights to a claim under this policy can or will transfer to a third party or buyer.**

**(34)    NON - REDUCTION OF LIMITS OF LIABILITY**

Any loss hereunder shall not reduce the limit(s) of liability under this contract; except as noted under the limit of liability provisions as respects flood and earth movement and, if purchased and a part of this policy, the aggregate limit of liability.

**(35)    SUBROGATION AND SUBROGATION WAIVER**

It is agreed that upon payment of any loss, the Underwriters are subrogated to all the rights of the Insured or Mortgagor to the extent of such payment. Any written release or waiver of liability entered into by the Insured or Mortgagor in the course of their business prior to loss hereunder, shall not affect this insurance nor the right of the Insured or Mortgagor to recover hereunder.

**(36)    ARBITRATION AND APPRAISAL**

If all terms and conditions of this policy have been adhered to, and if the Insured and the Underwriters fail to agree on the amount of loss, each, upon written demand either of the Insured or the Underwriters made within (60) days after a receipt of proof of loss by the Underwriters, shall select a competent and disinterested appraiser. The appraisers shall then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Underwriters, such umpire shall be selected by a judge of a court of record in the county and state in which such appraisal is pending. Then, at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss.

If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing by any two of these three shall determine the amount of loss. Such award shall be binding on the Insured and Underwriters. The Insured and the Underwriters shall each pay the expenses of his or its chosen appraiser and shall both bear equally the other expenses of the umpire.

**(37)    SALVAGE AND RECOVERIES**

Any property for which the Underwriters have indemnified the Insured or Mortgagor by payment or replacement shall become the property of the Underwriters, but **there shall be no abandonment of property to the Underwriters.**

In any case, where one loss exceeds the total amount of all valid and collectable insurance applicable thereto, the Insured or Mortgagor shall be entitled to such part of any property recovered as is necessary to reimburse him in full for his excess loss; and the remainder, if any, belongs to the Underwriters except that the party obtaining or making the recovery shall retain therefrom the actual cost of obtaining or making the same.

**(38)    BRANDS AND LABELS**

If branded or labeled merchandise covered by this policy be damaged and the Underwriters elects to take all or any part of the property at the agreed or appraised value, the Insured may stamp "salvage "on the merchandise or its containers, or may remove the brands or labels if such a stamp or removal will not physically damage the merchandise. The expense of such stamping or removal will be charged to salvaging expenses.

**(39)    ASSISTANCE AND COOPERATION OF THE INSURED**

The Insured shall cooperate with the Underwriters, and upon the Underwriter's request shall attend hearings and trials and shall assist in affecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conducts of suits.

**(40)    CANCELLATION**

NOTWITHSTANDING anything contained in this Insurance to the contrary, this insurance may be canceled by the Insured at any time by written notice or by surrender of this contract of insurance. This insurance may also be canceled in whole or on any individual location(s) or designated peril(s) within the Insured's report of property items and values by or on behalf of the Underwriters by delivering to the Insured or by mailing to the Insured, by registered, certified or other first class mail, at the Insured's address as shown in this Insurance, written notice at least:

|      |                                                                                                     |
|------|-----------------------------------------------------------------------------------------------------|
| **(a)** | ten (10) days before the effective date of cancellation for non-payment of premium.              |
| **(b)** | thirty (30) days before the effective date of the cancellation for one or more of the following reasons: |

- **(1)**    fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;
- **(2)**    conditions which have materially increased the risk assumed; or,
- **(3)**    any other reason by mailing written notice of cancellation.

The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice. If this Insurance shall be cancelled by the Insured, the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater. If this Insurance shall be cancelled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the minimum premium stipulated herein whichever is the greater. Payment or tender of any earned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. The Insured is the sole payee for any return premium.

**(41)   TERRITORIAL LIMITS**

This policy covers within the fifty (50) states comprising the United States of America including the District of Columbia; and Canada.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROPERTY RATE ENDORSEMENT # PREND(10-5-05)

It is hereby agreed that the following rates apply:

**RESIDENTIAL REPOSSESSED PROPERTY**
**$1.15000 ANNUAL RATE**
**$0.09583 per month per $100 of reported values**

**RESIDENTIAL FORCED PLACE PROPERTY**
**$1.35000 ANNUAL RATE**
**$0.11250 per month per $100 of reported values**

**COMMERCIAL REPOSSESSED PROPERTY**
**$1.35000 ANNUAL RATE**
**$0.11250 per month per $100 of reported values**

**COMMERCIAL FORCED PLACE PROPERTY**
**$1.55000 ANNUAL RATE**
**$0.12917 per month per $100 of reported values**

**RATES ARE TO BE APPLIED SEPARATELY FOR ALL PROPERTY VALUES SPECIFICALLY
REPORTED AND SCHEDULED FOR EACH LOCATION OR FOR ANY OTHER COVERAGES ADDED TO
THIS POLICY BY ENDORSEMENT.**

Underwriters may change the rates charged at any time by giving the Insured at least sixty (60) days written
notice prior to any change.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
PREND

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RESIDENTIAL & COMMERCIAL PROPERTY WINDSTORM RATES #RCPWR (6-1-06)**

For properties located in the listed counties, the following rates apply:

**Alabama – $2.50 Annual Rate / $0.21 per month per $100 of reported values**

**1st Tier Counties –   Baldwin, Mobile**

**Florida – $2.50 Annual Rate / $0.21 per month per $100 of reported values**

**All Counties –   Bay, Brevard, Broward, Charlotte, Citrus, Collier, Dade, Dixie,**

Duval, Escambia, Flagler, Franklin, Gulf, Hernando, Hillsborough,

Indian River, Jefferson, Lee, Levy, Manatee, Martin, Monroe, Nassau,

Okaloosa, Palm Beach, Pasco, Pinellas, Saint Lucie, Santa Rosa,

**Sarasota, St. Johns, Taylor, Volusia, Wakulla, Walton**

**Georgia – $2.00 Annual Rate / $0.17 per month per $100 of reported values**

**1st Tier Counties – Bryan, Camden, Chatham, Glynn, Liberty, McIntosh**

**Louisiana – $2.75 Annual Rate / $0.23 per month per $100 of reported values**

1st & 2nd Tier Counties – Cameron, Iberia, Jefferson, Lafourche, Plaquemine,

Saint Bernard, Saint Mary, St. Tammany, Terrebonne, Vermillion,

Calcasieu, Jefferson Davis, Acadia, Lafayette, St. Martin, Iberville,

West Baton Rouge, Assumption, St. Martin, Ascension, St. James,

East Baton Rouge, St. John the Baptist, St. Charles, Orleans

**Mississippi - $2.50 Annual Rate / $0.21 per month per $100 of reported values**

**1st Tier Counties –      Hancock, Harrison, Jackson**

**North Carolina - $2.00 Annual Rate / $0.17 per month per $100 of reported values**

1st Tier Counties –   Beaufort, Brunswick, Camden, Carteret, Craven, Currituck, Dare, Hyde,

Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Tyrell

**South Carolina - $2.00 Annual Rate / $0.17 per month per $100 of reported values**

1st Tier Counties –       Beaufort, Charleston, Georgetown, Horry

**Texas - $1.75 Annual Rate / $0.15 per month per $100 of reported values**

1st Tier Counties –   Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris,

   Jefferson, Kennedy, Kleberg, Matagorda, Nueces, Refugio, Willacy

**Virginia - $2.00 Annual Rate / $0.17 per month per $100 of reported values**

**1st Tier Counties –       Accomack, Northampton, City of Virginia Beach**

Underwriters may change the rates charged at any time by giving the Insured at least sixty (60) days written notice prior to any change.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
RCPWR(6-1-06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MOBILE HOME COVERAGE ENDORSEMENT #MHEND(10-01-05)

It is understood and agreed under Section II; Property Excluded (11) (o) is hereby deleted.

It is hereby agreed that the following rates apply:

| **MOBILE HOME REPOSSESSED PROPERTY** | **MOBILE HOME FORCED PLACE PROPERTY** |
|---|---|
| **$3.50000 ANNUAL RATE** | **$3.50000 ANNUAL RATE** |
| **$0.29167 per month per $100 of reported values** | **$0.29167 per month per $100 of reported values** |

A **$2,500.00 Deductible** shall apply to each covered loss, except loss caused by Flood or Earth Movement, for Mobile Homes. This deductible shall apply separately to each location and to each occurrence. The deductible amount for loss caused by Flood and Earth Movement, if covered by this policy, shall be the same as shown on Deductible Endorsement # DEDCL(10-1-05).

Valuation provided under this endorsement for Mobile Homes is Actual Cash Value (ACV). Actual Cash Value means there will be a deduction for depreciation.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
MHEND

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE ENDORSEMENT # DEDCL(10-1-05)

It is hereby agreed that the following deductibles shall apply to all loss arising out of direct physical loss or damage to any residential property or to interest hereunder, except as amended or excluded under the Certificate:

### 1.1 Residential Deductible

1.1     **$1,000.00** any one location for each occurrence, for all covered perils, except as noted in 2.1, 3.1, and 4.1 of this endorsement.

### 1.2 Commercial Deductible

1.2     **$5,000.00** any one location for each occurrence, for all covered perils, except as noted in 2.1, 3.1, and 4.1 of this endorsement.

### 2. Flood Deductible

2.      **$50,000.00** any one location for each occurrence for the peril of Flood.

### 3. Earthquake Deductible

3.      **$50,000.00** any one location for each occurrence for the peril of Earth Movement.

### 4. Hurricane, Wind, Hail, or Wind Driven Rain or Water Deductibles

4.1     For any properties located in the First Tier Counties of any designated State, as further defined in 4.2 and 4.3 of this endorsement, the deductible for the perils of Hurricane, Wind, Hail, or Wind Driven Rain or Water, for any one location for each occurrence is: **Residential $2,500.00 or two percent (2%) of the scheduled value, whichever is greater; Commercial $5,000.00 or five percent (5%) of the scheduled value, whichever is greater.**

4.2     For purposes of this endorsement, the designated States are; **Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas and Virginia.**

4.3     First Tier Counties are defined as those counties which are contiguous with the Gulf of Mexico and/or the Atlantic Ocean in the designated States listed in 4.2 and including Harris County, Texas.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. 7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
DEDCL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FREEZE ENDORSEMENT #FRZEND (10-01-05)

The policy wording as applies to Section III, Perils Excluded, Item (15) (g) is hereby replaced as follows:

Loss or damage, including subterranean water damage, resulting from freeze of plumbing or heating or fire protection systems in buildings that have been vacant beyond a period of thirty (30) consecutive days immediately preceding the loss are hereby excluded unless the insured has used reasonable care to maintain heat in the property or unless the insured has shut off the water supply to the property and has drained all pipes, plumbing, sprinkler systems, hot water heaters, radiators, including all appliances, heating and cooling systems of water.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
FRZEND

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RCV/VALUATION ENDORSEMENT # RCVALEND(10-05-05)

### VALUATION ENDORSEMENT

At the time of loss, the basis of loss adjustment, unless otherwise endorsed herein, shall be as follows:

1. The insurance under this policy applicable to all property at each specifically reported and scheduled location described under (3) PREMIUM AND REPORTS is hereby extended to cover such item(s) for their **replacement cost** without deduction for depreciation at the time of loss **except as provided below or by endorsement.** The Underwriters shall not be liable for more than an amount greater than the insurable interest of the Insured at the time of loss under this policy, or for more than the value or limit of the liability that applies as specifically reported and scheduled by the Insured.

   In determining the amount of insurance required to equal **EIGHTY PERCENT (80%)** of the full replacement cost of the property at each location insured, do not include the value of land and excavations, foundations, supports, underground pipes, flues, drains and wiring which are below the surface of the ground. However, this policy **does not cover** the following property at each location for replacement cost basis, but rather for an **actual cash value** basis, which is further defined as replacement cost less any applicable depreciation at the time of loss;

   1. carpeting or other floor coverings, drapes, cabinetry, built-in domestic appliances, and;

   2. heating or air conditioning units, and water heaters.

2. The Underwriter's liability to the Insured for loss under this policy, **shall not exceed the lesser of** the following amounts **and from that adjusted amount, the applicable deductible shall be applied**

   1. the amount of coverage requested by the Insured for property specifically reported and scheduled for each location provided under this policy; or

   2. the replacement cost of the property(ies), or any part thereof, as reported and scheduled at each location by the Insured, without deduction for depreciation, on the same premises, intended for the same occupancy and use at the time of loss, if at the time of loss, the reported coverage limit of liability is **EIGHTY PERCENT (80%)** or more of the replacement cost of the insured item immediately before the loss; or

   3. the amount actually and necessarily expended in repairing or replacing with like kind and quality of the property(ies) insured hereunder for replacement cost without deduction for depreciation, or any part thereof, on the same premises, intended for the same occupancy and use, if at the time of loss, the reported coverage limit of liability is **EIGHTY PERCENT (80%)** or more of the replacement cost of the insured item immediately before the loss; or

   4. the actual cash value of the property damaged *with deduction for depreciation* but not exceeding the limit of liability reported and scheduled under this policy, if at the time of loss, the reported coverage limit of liability **is not** EIGHTY PERCENT (80%) or more of the replacement cost of the insured item immediately before the loss: or

3. **The Underwriters shall not be liable for:**

1. any loss occasioned by the enforcement of any federal, state or municipal law, ordinance or ruling regulating the construction, reconstruction, condemnation, seizure, confiscation or repair of buildings, or loss due to the assessment of fire department service charges;

2. the difference between the replacement cost and actual cash value of any loss under this policy unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch, and in any event, unless repair or replacement is completed within one hundred-eighty (180) days after the destruction or damage. However, the Underwriters, during the one hundred eighty (180) day period, and in writing, may allow further time. After completion of repairs or replacement of the property within the one hundred-eighty (180) day period, the Underwriters will pay the difference between actual cash value and replacement cost subject to any other terms, conditions, and provisions of this policy.

3. The Underwriters shall not be liable for a greater proportion of any loss insured under this policy, **less the amount of any applicable deductible,** than the value reported by the Insured, subject to any other terms, conditions, or provisions of this policy, bears to the total insurance on such location whether or not such other insurance covers in the same manner and to the same extent as this policy, including any endorsements, and whether such other insurance is collectible or not.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
RCVALEND

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE -
## PHYSICAL DAMAGE - DIRECT

This Policy does not cover any loss or damage arising directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination however such nuclear reaction nuclear radiation or radioactive contamination may have been caused * NEVERTHELESS if Fire is an insured peril and a Fire arises directly or indirectly from nuclear reaction nuclear radiation or radioactive contamination any loss or damage arising directly from that Fire shall (subject to the provisions of this policy) be covered EXCLUDING however all loss or damage caused by nuclear reaction nuclear radiation or radioactive contamination arising directly or indirectly from that Fire.

* Note - If Fire is not an insured peril under this policy the words from "NEVERTHELESS" to the end of the clause do not apply and should be disregarded.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. <u>7LAP420080</u>**
**Effected with Certain Underwriters At Lloyd's London.**
NMA 1191

## LIABILITY SUPPLEMENTAL DECLARATIONS

Certificate Number: **7LAP420080**
Authority Reference Number: **BO429CUC070516**

UNDERWRITERS AT
LLOYDS, LONDON 100%

Name and address
of the Assured

**OAK PARK REAL ESTATE EQUITIES LLC**
**3275 S. JONES STE 105**
**LAS VEGAS, NV 89146**

Policy Period: From **06/01/2007** to **06/01/2008** at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| LIMITS OF INSURANCE | |
| --- | --- |
| General Aggregate Limit (Other Than Products - Completed Operations) | $2,000,000 |
| Products - Completed Operations Aggregate Limit | Excluded |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Fire Damage Limit | $50,000 Any One Fire |
| Medical Expense Limit | $5,000 Any One Person |

| DESCRIPTION OF BUSINESS AND LOCATION OF PREMISES | | | |
| --- | --- | --- | --- |
| Form of Business: | | | |
| [ ] Individual | [ ] Joint Venture | [ ] Partnership | [ X ] Organization (Other than Partnership or Joint Venture) |

Location of All Premises You Own, Rent or Occupy: As per reported by the Assured.

| PREMIUM | | |
| --- | --- | --- |
| **REO PROPERTY ONLY** | **Per $100 of valuation** | **Annual Rate** |
| REO Residential Properties | | $0.45000 |
| REO Commercial Properties | | $0.45000 |
| Vacant Land | | $0.45000 |

**FORMS AND ENDORSEMENTS**
Forms and Endorsements applying to this Section and made part of this policy at time of issue:
**CGL/7/95; EXCLDPS; EXCL-FL; GCE-CX; NMA 1256; EPAV#194; EXCL-PALC; EXCL-PCO**

# GENERAL LIABILITY COVERAGE FORM (CGL/7/95)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words ,"you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing the insurance.

The word "insured" means any person or organization qualifying as such who WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGE

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement.**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:
        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.
    b.  This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
        (2) The "bodily injury" or "property damage" occurs during the policy period.
    c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury"

2.  **Exclusions.**
    This insurance does not apply to:
    a.  Expected or Intended Injury
        "Bodily injures" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or

property.
    b.  Contractual Liability
        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or a aaa a agreement. This exclusion does not apply to liability for damages:
        (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
        (2) That the insured would have in the absence of the contract or agreement.
    c.  Liquor Liability
        "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
        (1) Causing or contributing to the intoxication of any person;
        (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
        (3) Any statute ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
        This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.
    d.  Workers Compensation and Similar Laws
        Any obligation of the insured under a workers compensation. disability benefits or unemployment compensation law or any similar law.
    e.  Employer's Liability
        "Bodily injury" to:
        (1) An "employee" of the insured arising out of and in the course of:
            (a) Employment by the insured; or
            (b) Performing duties related to the conduct of the insured s business; or
        (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
        This exclusion applies:
        (1) Whether the insured may be liable as an employer or in any other capacity; and
        (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
        This exclusion does not apply to liability assumed by the insured under an "insured contract".
    f.  Pollution
        (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
            (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
            (b) At or from any premises, site or location which is or was at any time

used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

  (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

  (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

  (a) Request; demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

  (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:
  (a) Less than 26 feet long; and
  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Section V - Definition, paragraph 11, f.(2) or f.(3).

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage to Your Work
    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured
    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  Recall of Products, Work or Impaired Property
    Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
    (1) "Your product";
    (2) "Your work"; or
    (3) "Impaired property";
    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner.  A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement.**
   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking such damages.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.  But:
   (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
   (2) Our right and duty to defend end when we have used up the applicable limit of

insurance in the payment of judgments settlements under Coverage A or B or medical expenses under Coverage C.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b.  This insurance applies to:
   (1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
   (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services,
   but only if the offense was committed in the "coverage territory" during the policy period

2. **Exclusions.**
   This insurance does not apply to:
   a.  "Personal injury" or "advertising injury":
   (1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity:
   (2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy
   (3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or
   (4) For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.
   b.  "Advertising injury" arising out of:
   (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;
   (2) The failure of goods, products or services to conform with advertised quality or performance;
   (3) The wrong description of the price of or goods, products or services: or
   (4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement.**
   a.  a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
   (1) On premises you own or rent;
   (2) On ways next to premises you own or rent; or
   (3) Because of your operations;
   provided that:
   (1) The accident takes place in the "coverage territory" and during the policy period;
   (2) The expenses are incurred and reported to

us within one year of the date of the accident; and
(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
   b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:
(1) First aid administered at the time of an accident;
(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and
(3) Necessary ambulance, hospital, professional nursing and funeral services.

2.  **Exclusions.**
   We will not pay expenses for "bodily injury":
   a.  To any insured.
   b.  To a person hired to do work for or on behalf of any insured or a tenant of any insured.
   c.  To a person injured on that part of premises you own or rent that the person normally occupies.
   d.  To a person. whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.
   e.  To a person injured while taking part in athletics.
   f.  Included within the "products-completed operations hazard".
   g.  Excluded under Coverage A.
   h.  Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

# SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:
1.  All expenses we incur.
2.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the ~~Bodily Injury Liability Coverage applies. We do~~ not have to furnish these bonds.
3.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
4.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or  suit , including actual loss of earnings up to $100 a day because of time off from work.
5.  All costs taxed against the insured in the  suit .
6.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make

an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
7.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.
These payments will not reduce the limits of insurance.

# SECTION II - WHO IS AN INSURED

1.  If you are designated in the Declarations as:
   a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
   b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
   c.  An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
2.  Each of the following is also an insured:
   a.  Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:
(1) "Bodily injury" or "personal injury":
   (a) To you, to your partners or members (if you are a partnership or joint venture) or to a co - "employee" while in the course of his or her employment or while performing duties related to the conduct of your business;
   (b) To the spouse, child, parent, brother or sister of that co - "employee" as a con- sequence of paragraph (1)(a) above;
   (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs(1)(a) or (b) above; or
   (d) Arising out of his or her providing or failing to provide professional health care services.
(2) "Property damage" to property:
   (a) Owned occupied or used by,
   (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.
   b.  Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:
  (1) With respect to liability arising out of the maintenance or use of that property; and
  (2) Until your legal representative has been appointed.
d. Your legal representative if you die. but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:
a. "Bodily injury" to a co - "employee" of the person driving the equipment; or
b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization. However:
a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;
b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and
c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
a. Insureds;
b. Claims made or "suits" brought; or
c. Persons or organizations making claims or bringing suits.
2. The General Aggregate Limit is the most we will pay for the sum of:
a. Medical expenses under Coverage C;
b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
c. Damages under Coverage B.
3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products- completed operations hazard".
4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.
5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of
a. Damages under Coverage A; and
b. Medical expenses under Coverage C
because of all "bodily injury" and "property damage" arising out of any one "occurrenc".
6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner. arising out of any one fire.
7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In-that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**
Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of obligations under this Coverage Part.
2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**
a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
  (1) How, when and where the "occurrence" or offense took place;
  (2) The names and addresses of any injured persons and witnesses; and
  (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
b. If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and
**(2)** Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:
**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
**(2)** Authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

**3. Legal Action Against Us.**
No person or organization has a right under this Coverage Part:
**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.
A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
**a.** Primary Insurance
This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then. we will share with all that other insurance by the method described in c. below.
**b.** Excess Insurance
This insurance is excess ever any of the other insurance, whether primary, excess, contingent or on any other basis:
**(1)** That is Fire, Extended Coverage, Builders Risk, Installation Risk or similar coverage for "your work";
**(2)** That is Fire insurance for premises rented to you; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).
When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
**(2)** The total of all deductible and self-insured amounts under all that other insurance.
We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of insurance shown in the Declarations of this Coverage Part.
**c.** Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**
**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.
**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured . If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.
**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**
By accepting this policy, you agree:
**a.** The statements in the Declarations are accurate and complete;
**b.** Those statements are based upon representations you made to us; and
**c.** We have issued this policy in reliance upon

your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

# SECTION V - DEFINITIONS

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

**c.** All parts of the world if:

**(1)** The injury or damage arises out of:

**(a)** Goods or products made or sold by you in the territory described in a. above; or

**(b)** The activities of a person whose home is in the territory described in a. above, but is away for a short time on your

business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily-occupied by you with permission of the owner is not an insured contract ;

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings,

opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

d. but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. Mobile equipment; means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery; forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles whether self-propelled or not maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators including spraying, welding, building, cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "auto":

(1) Equipment designed primarily for

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident; including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment:

b. Malicious prosecution;

c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor:

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person s or organization s goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14.

a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession, or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service. maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition

in or on a vehicle created by the "loading or unloading" of it;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**15.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent

**17.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other properly rented to or located for the use of others but not sold.

**18.** ~~"Temporary worker" means a person who is~~ furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**19.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

### SCHEDULE

Description of Professional Services:

1. Financial Institution or Related Services

2. Property Management or Related Services

3. Real Estate or Related Services

With respects to any professional services shown in Schedule, it is agreed that this endorsement modifies insurance provided under the General Liability Coverage. Underwriters shall not have an obligation to pay for any costs, interest, or damages attributable to "bodily injury" or "property damage" due to the rendering or failure to render any professional service as a financial institution, credit union, bank, servicing agent, real estate agent/broker, real estate appraiser, consultant or mortgage company/banker.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
EXCLDPS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FINANCIAL INSTITUTIONS
## EXCLUSION OF FIDUCIARY LIABILITY

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

Underwriters shall not have an obligation to pay for any costs, interest, or damages attributable to "bodily injury" or "property damage" arising out of the ownership, maintenance or use, including all related operations, of property in which you are acting in a fiduciary or representative capacity.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. <u>7LAP420080</u>**
**Effected with Certain Underwriters At Lloyd's London.**
EXCL-FL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## GENERAL ENDORSEMENT
## CANCELLATION

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

Section IV, Part 9, "When We Do Not Renew", is deleted and the following is substituted in its place:

Not withstanding anything contained in this Insurance to the contrary, this insurance may be canceled by the Assured at any time by written notice or by surrender of this contract of insurance. This insurance may also be canceled in whole or on any individual location(s) or designated peril(s) within the Assured's report of property items and values by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice at least:

1. Ten (10) days before the effective date of cancellation for non-payment of premium.

2. Thirty (30) days before the effective date of the cancellation for one or more of the following reasons:

    1. Fraud or material misrepresentation affecting this policy or a claim filed under this policy or a violation of any of the terms or conditions of this policy;

    2. Conditions which have materially increased the risk assumed; or,

    3. Any other reason by mailing written notice of cancellation.

The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice. If this Insurance shall be canceled by the Assured, the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be canceled by or on behalf of the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the minimum premium stipulated herein whichever is the greater. Payment or tender of any earned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law. The Assured is the sole payee for any return premium.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. 7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
GCE-CX

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR INCIDENT EXCLUSION CLAUSE - LIABILITY-DIRECT (BROAD) (USA)

(Approved by Lloyd's Underwriters' Non-Marine Association)

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone: -Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability,not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability- Direct (Limited) applies.

**This policy\*** does not apply:

1. Under any Liability Coverage, to injury, sickness, disease, death or destruction
   a. with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association , Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   b. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

3. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
   a. the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   b. the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   c. the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

4. As used in this endorsement:
   **"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or byproduct material; **"source material"**, **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act 1954

or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

 **"nuclear facility"** means

a.  any nuclear reactor,
b.  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
c.  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
d.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations, **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. With respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

*NOTE:- As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
NMA 1256

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSIONS / LIMITATIONS

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

### PUNITIVE / EXEMPLARY DAMAGES LIMITATION

Insurers shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages beyond the limits of coverage afforded by this policy. It is agreed that if a suit shall have been brought against the Assured for claim falling within the coverage provided under this policy seeking compensatory, punitive or exemplary damages, then insurers will afford a defense to such action; however, it is hereby understood and agreed that the limit of liability is inclusive of the indemnification and/or defense of compensatory, punitive or exemplary damage only in those states where coverage is applicable.

### PROPERTY ENTRUSTED EXCLUSION

Insurers shall not have an obligation to pay for any costs, interest, or damages attributable to "property damage" to property of others entrusted to you for safekeeping; or on premises rented to you.

### EXCLUSION - ASSAULT AND BATTERY

Insurers shall not have an obligation to pay for any costs, interest, or damages attributable to:

1. Assault & Battery, whether caused by or at the instructions of, or at the direction of or negligence of the insured, his employees, or any causes whatsoever and;

2. Allegations that the insured's negligent act, errors or omissions in connection with the hiring, retention, supervision or control of employees, agents or representatives caused, contributed to, related to or accounted for the assault and battery.

### EXCLUSION - VOLUNTARY LABOR

This insurance does not apply to bodily injury to any member, associate, (affiliated) member, or to any person or persons loaned to volunteering services to the Assured, whether or not paid by the Assured, arising out of or in the course of work performed.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO.  7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
EPAV#194

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSIONS

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

## EXCLUSION - ABSOLUTE POLLUTION

It is hereby understood and agreed that coverage part Section I, Exclusion (f) is hereby deleted and replaced by the following:

to any loss whether indemnification or legal defense for any loss due to

1. "Bodily Injury" or "Property Damage" which would have or has arisen or occurred in whole or part arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

2. Any loss, cost or expense arising out of any:

   a. request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   b. Claim or suit by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

3. It is further agreed and clarified that this policy provides no coverage for and will not respond to any claim, demand, liability, action, judgment, cost, attorneys fees or expense connected therewith that may arise out of any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Pollutants are hereby defined as, but not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapors, soot, fumes, acids, alkalis, chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water. Waste includes material to be recycled, reconditioned or reclaimed.

## EXCLUSION - ASBESTOS AND RADON GAS

Notwithstanding anything contained in this certificate to the contrary, this certificate does not apply to "bodily injury", "personal injury" or "property damage" arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2. The use of asbestos in construction or manufacturing any goods, product or structure; or

3. The removal of or containment of asbestos from or within any goods, product or structure; or

4. The installation, manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

5. The presence of or causing to be exposed, any Radon Gas by the named insured or the insured's failure to detect, disclose or identify such presence of Radon Gas.

The coverage provided by this certificate does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

### EXCLUSION - LEAD POISONING

This insurance does not apply to bodily injury, sickness, mental or emotional distress, disability, death or property damage caused by or arising from the existence, inhalation, or exposure to lead whether as a base or ingredient in any form including but not limited to lead used as a paint, varnish or other "paint-like" covering material, which may be, or may have been present in or on any of the premises covered under this insurance.

### EXCLUSION - COMMUNICABLE DISEASE

This insurance does not apply to bodily injury, sickness, mental or emotional distress. disability, arising out of the transmission of sickness or disease by an Assured through sexual contact.

### ANIMAL EXCLUSION

This policy does not provide coverage for "bodily injury," "property damage" or medical payments to others, caused by any animal, whether owned or not owned by any "insured."

### ABUSE OR MOLESTATION EXCLUSION

The following exclusion is added to Paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) and paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):
 This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraph 1. above.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. 7LAP420080**
**Effected with Certain Underwriters At Lloyd's London.**
EXCL-PALC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION PRODUCTS - COMPLETED OPERATIONS HAZARD

This endorsement modifies insurance provided under the GENERAL LIABILITY COVERAGE FORM:

This insurance does not apply to "bodily injury" or "property damage" included within the products - completed operations hazard.

**ATTACHING TO AND FORMING PART OF CERTIFICATE NO. <u>7LAP420080</u>**
**Effected with Certain Underwriters At Lloyd's London.**
EXCL-PCO

Aug 09 06 02:08p      APIA, Inc.                    888-842-2740              P.2

## LLOYDS OF LONDON

# EVIDENCE OF INSURANCE COVERAGE PLACED

OAK PARK REAL ESTATE EQUITIES LLC
6655 W. SAHARA AVENUE
LAS VEGAS, NV 89146

| | |
|---|---|
| Date: | August 9, 2006 |
| Master Policy Number: | 5LAP420080 |
| | |
| Effective: | 06/01/2006 |
| Expiration: | 06/01/2007 |
| | |
| Loan: | SOU 12 |

1251 SOUTH WILLETT ST

MEMPHIS, TN 38120

Loss Payee:      LIGHTHOUSE CAPITAL FUNDING, INC. A CALIFORNIA CORPORATION  ATIMA
                 15332 ANTIOCH ST., SUITE 540 PACIFIC PALISADES, CA 90272

Addtl. Insured:

                                                   Flood Zone:    Community #:

Valuation:       Replacement Cost

| Included/Excluded Perils | Coverage Description | Premium |
|---|---|---|
| Wind REO Comm. : Deductible $5,000.00<br>Earthquake : Deductible $50,000.00<br>Flood : Deductible $50,000.00<br>AOP REO Comm. : Deductible $5,000.00<br>E&O : Deductible $10,000.00 | Prop. REO Commercial : Building<br>Value $4,500,000.00 | $60,750.00 |
| | TOTAL BEFORE TAX & FEE | $60,750.00 |

| Tax/Fee Description | Amount |
|---|---|
| Surplus Lines Tax | $2,126.28 |
| Stamping Fee | $0.00 |
| Policy Fee | $0.00 |
| TOTAL PREMIUM | $62,876.28 |

Your lender has ordered insurance on the above listed property for
the coverage amount and premium indicated, which may not be
sufficient to protect your interest in the property.
Coverage is limited to perils insured under our agreement with your
lender and is subject to all limitations and exclusions set forth
thereon.

NOTE: The annualized premium excluding taxes for the above policy is      $60,750.00



TODAY'S DATE April 1, 2008

**CLAIM FORM**

ACCOUNT NAME:OAK PARK REAL ESTATE EQUITIES LLC

LENDER: LIGHTHOUSE CAPITAL FUNDING, INC.

ADDRESS:15332 ANTIOCH STREET, #540, PACIFIC PALISADES, CA 90272

TELEPHONE # (310) 230-8335   FAX # (310) 230-8336

REPORTED BY:GARY LESHGOLD

**PROPERTY INFORMATION:**

LOAN: #1009 DATE OF LOSS/DISCOVERY: MARCH 28, 2008

ADDRESS: 1251 S. WILLET STREET

CITY, STATE, ZIP: MEMPHIS, TN 38106

DATE ADDED TO POLICY:_____ AMOUNT INSURED:_____

AMOUNT OF LOSS:_____ VACANT OR OCCUPIED:5-10 UNITS ARE OCCUPIED

CIRCLE TYPE OF LOSS:FIRE    LIGHTNING    WIND   HAIL   FREEZE

WATER DAMAGE   **VANDALISM**    **THEFT**    OTHER:_____

COMMENTS: SOME COPPER PIPING, ELECTRICAL COPPER WIRING AND HVAC UNITS HAVE BEEN STOLEN FROM THE PROPERTY. THE VANDALS HAVE BROKEN DOORS AND WINDOWS AND DAMAGED THE DRYWALL.

THE PROPERTY IS FENCED AND THERE IS A CARETAKER WHO LIVES ON SITE.  IN ADDITION, THERE ARE BETWEEN 5-10 OCCUPIED APARTMENTS AT THE PROPERTY.

POLICE / FIRE DEPARTMENT NOTIFIED?:NO, NOT TO THE BEST OF OUR KNOWLEDGE

DATE LAST INSPECTED: 08/06; 03/08 AFTER IDENTIFYING ISSUE WITH BORROWER

DATE BOARDED & SECURED:2006____ IF REO, DATE FORECLOSED:ESTIMATED DATE 4/30/08

CONTACT PERSON:GARY LESHGOLD

TELEPHONE#: (310) 230-8335 FAX#: (310) 230-8336

PLEASE FAX THIS REPORT TO APIA, Inc.
ATTN: Gloria Kelley    FAX# 830-931-9765    PHONE # 830-538-9538
APIA, INC    PO BOX 596    CASTROVILLE, TX  78009



EXHIBIT
C



**Claims Management Services**
Mark Kozera
Branch Manager

January 5, 2009

EXHIBIT

D
_____

Lighthouse Capital Funding
15332 Antioch Street, #540
Pacific Palisades, CA  90272
Attn:  Laurie Dennis

Re:     Policy # :                          7LAB430080
        Reported Date of Loss:              3/26/2008
        Location of Loss:                   1251 South Willet St., Memphis, TN  38106
        Crawford File #:                    6706-1207749

Dear Lighthouse Capital Funding:

We are the adjusters assigned by Certain Underwriters at Lloyds, London to handle the above referenced claim.  Upon receipt of the assignment, we conducted a full investigation into the circumstances surrounding your loss.  We inspected the property, photographed the damages and prepared a report of our findings for Certain Underwriters at Lloyds, London.

The claim was filed for vandalism and theft damage.

Following our last report, the field adjuster requested police reports from the Memphis police department.  At that time, there were none found on file.  Since there are no reports on file, it is our opinion the alleged vandalism and theft has been due to multiple occurrences.  It is also our opinion these damages occurred prior to the policy inception.  The insured has failed to secure the property as the fencing has not been repaired to deter vandals.

**(15)  Perils Excluded**

Not withstanding anything to the contrary contained herein, this policy does not cover loss resulting in damage to or destruction of the insured property directly or indirectly by or resulting from:

(a)     wear and tear; marring; deterioration, rust or corrosions, fungus, decay, mold, wet or dry rot, inherent vice, hidden or latent defect; obsolescence, neglect; animals, birds, rodents, vermin, termites or other insects; smog; rust or corrosion; smoke, vapor or gas from agricultural or industrial operations; consequential loss; discharge, dispersal, seepage, migration, release or escape of pollutants, settling, shrinkage, cracking, shifting, bulging, or expansion including resultant cracking of pavements, foundations, patios, walls, floors, roofs or ceilings; unless such cracking, shrinkage, bulging or expansion is directly caused by fire, lighting, smoke, windstorm, hurricane, hail, explosion, aircraft, vehicles, vandalism, malicious mischief, riot, civil commotion, and falling objects.

(j)     i) vandalism and malicious mischief; theft, and mysterious disappearance to vacant property if the insured has failed to properly secure and conduct monthly inspections of the interior and exterior of the property; or ii) vandalism and malicious mischief; theft, and mysterious disappearance on properties prior to foreclosure proceeding and after foreclosure if caused by any party occupying the premises with or without the knowledge of the Insured; or iii) vandalism and malicious mischief; theft, and mysterious disappearance on property covered by another insurer that has denied coverage because of vacancy.  Furthermore, any loss to the interior of the insured property must first have signs of forced entry to be covered under this policy.

(k)     any loss occurring while the hazard is increased by any means within the Insured's or Mortgagor's knowledge or control; nor any loss by neglect, meaning neglect of the Insured or Mortgagor to use all reasonable means to save and preserve property at and after the time of loss, or when property

EXCELLENCE IN EVERYTHING WE TOUCH

is endangered by a Peril insured against, nor any loss after the property is sold or given to someone unless the loss was first reported prior to release of the property.

(32)       **Notice of loss, Duties, and Responsibilities**
The Insured or Mortgagor **shall immediately report in writing** , to the Underwriters, a description of every claimed loss or damage which occurs and may become a claim under this insurance immediately after it becomes known to the Insured or Mortgagor.

**The Insured or Mortgagor must immediately:**

(1)   ~~notify the police in case of loss by theft or vandalism~~
(2)   protect the property from further damage or loss,
(3)   make reasonable and necessary repairs to protect the property from further damage or loss,
(4)   keep an accurate record or repair expenses necessary to protect the property from further damage or loss
(5)   make a list of all damaged or destroyed property showing in detail cost quantities, costs, actual cash value, amount or loss claimed and any other information underwriters may require,
(6)   attach all bills, receipts and related documents that substantiate the figures in the list, Underwriters will not reimburse for the costs or repairs unless records and receipts are provided.
(7)   Exhibit the damaged property as often as Underwriters may require,
(8)   Submit to an examination under oath
(9)   do everything possible to preserve any rights to recover any loss from others.  If the insured should do anything to impair the rights of recovery by Underwriters, the loss will not be covered.

~~Since no police reports have been filed, the insured has failed to secure the property~~, and the damages appear to be continuous, there is no coverage for these damages.

In bringing these Policy Provisions to your attention, we do not intend to waive compliance with the terms and conditions of the policy.  Furthermore, we expressly reserve all of the rights, conditions, and defenses.

Should you be aware of any additional information or evidence, which might affect this coverage determination, please advise us immediately so that we may undertake additional investigation and reconsideration of this position by your underwriters.

Sincerely,

Crump Insurances Services
By: Crawford & Company

Melissa D. Hollingsworth
Claims Adjuster

Cc:   Greenspan Co. / Adjusters International

---

EXCELLENCE IN EVERYTHING WE TOUCH

4680 North Royal Atlanta Drive ■ Tucker, GA 30084-3842 ■ (770) 491-3400 ■ Fax (770) 496-3021 ■
www.crawfordandcompany.com
2



THE
HOWARTH
GROUP

INSURANCE CLAIM CONSULTANTS

February 3, 2009

Melissa D. Hollingsworth
Claims Adjuster
Crawford & Company
4680 North Royal Atlanta Drive
Tucker, GA 30084



**EXHIBIT**

E

RE:     Oak Park Apt. /Lighthouse Capital Funding

Dear Ms. Hollingsworth:

I am in receipt of your letter of January 5, 2009, in which you purport to deny the claim of Lighthouse Capital Funding, Inc. for theft and vandalism coverage upon my client's property in Memphis. As you know, I am not an attorney. However, I have discussed this matter with an attorney and have reviewed the facts related to this claim and your grounds for denial.

Your denial is not based upon facts as I know them and cannot have been the product of a genuine and complete investigation of the loss. A denial under such circumstances may expose your company to a claim for bad faith and may constitute an unfair and deceptive trade practice under the Tennessee Consumer Protection Act.

You have given four reasons for your denial:

1)     No police report was filed by the insured for this occurrence;
2)     The theft/vandalism damages resulted from multiple occurrences;
3)     The theft/vandalism damages occurred prior to the policy inception; and,
4)     The insured failed to secure the property as the fencing had not been       repaired
       to deter vandals.

The police were in fact called and conducted an investigation that resulted in an arrest for theft and vandalism. A police report was prepared and is attached hereto.

It is of no consequence that the theft or vandalism occurred by the use of one or more trips to the site by this team unless that resulted from a failure to properly secure the property. I am advised that the essence of such a defense would be that the risk of loss of the insurer was greater than that contemplated when the policy contract was written. That is not the case here, and I am aware of no facts from which that may be inferred. Additionally, the campaign should be treated as a single occurrence.

Page 2
Melissa Hollingsworth
Claim Adjuster
February 3, 2009

      The insured employed an on-site manager, and he remains on-site to this day.  The fencing was kept in good repair throughout the time of the policy and remains in good repair to this day.  The insured had no obligation to secure the property to such an extent that no loss ever could occur.  If that    were the case, there would be no need for coverage.

      There is no evidence to my knowledge whatever that any theft or vandalism occurred prior to policy inception, for which any claim is made.  Please advise me of your evidence in that regard.

      The purpose of this letter is to demand that your improvident decision to deny this claim promptly be reconsidered and that the claim be honored.  It is the hope and expectation of Lighthouse Capital Funding that you will correct these mistakes and that the carrier will honor its contractual obligations.

      Should you choose to persist in this denial, we must respectfully demand specific facts upon which each of the four bases for denial are premised.  I will recommend to Lighthouse Capital Funding that they provide that information to counsel experienced in such matters to determine what further efforts need to be made on its behalf.

Sincerely,

Chuck Howarth, CPCU
The Howarth Group, Inc.

CH/ah
Enclosures
Cc. Greenspan Co. / Adjusters International ✓

Copy - Davy Leihgold



**Crawford**®
Claims Management Services
Mark Kozera
Branch Manager

March 24, 2009

The Howarth Group
Insurance Claim Consultants
137 Third Ave North
Franklin, TN 37064
Attn: Chuck Howarth

Re:   Policy # :                        7LAP420080
      Reported Date of Loss:           3/28/2008
      Location of Loss:                1251 South Willet St., Memphis, TN 38106
      Crawford File #:                 6706-1207749

Dear Mr. Howarth:

This will acknowledge your letters of 2/3/2009 and 3/6/2009.

We have reviewed the documentation provided by your company and bring your attention to the following:

1)   The date of loss was reported as 3/28/2008. The police reports provided by your company show loss dates of: 7/1/2008, 7/25/2008, and 1/16/2009.

2)   The police reports filed also demonstrate there were multiple occurrences of vandalism and theft as previously determined through our investigation.

3)   This policy was cancelled as of 5/13/2008. The police reports provided are not applicable.

4)   During site inspection on 6/6/2008, the field adjuster's photos clearly show holes in the fencing around the railroad tracks which had not been repaired allowing unrestricted access to and from the property.

If there is any further documentation your company can provide that will warrant reconsideration, we will gladly review it.

Should you be aware of any additional information or evidence, which might affect this coverage determination, please advise us immediately so that we may undertake additional investigation and reconsideration of this position by your underwriters.

Sincerely,

Crump Insurances Services
By: Crawford & Company

*Melissa D. Hollingsworth*

Melissa D. Hollingsworth
Claims Adjuster

Cc:  Greenspan Co. / Adjusters International

EXCELLENCE IN EVERYTHING WE TOUCH
100 Glenridge Point Parkway ■ Atlanta, GA 30342 ■ (404)497-6900 ■ Fax (678) 937-8264 ■ www.crawfordandcompany.com

**EXHIBIT**

F